FILED 65
Honorable William E. Seay Missouri House of Representatives Room 315, State Capitol Jefferson City, Missouri 65101
Dear Representative Seay:
This opinion is in response to your question asking as follows:
 "In what manner does a City of the 4th Class in the State of Missouri which has voted by majority vote under the terms of 79.050 of the 1969 Revised Statutes of Missouri as amended to create the position of an appointed Chief of Police negate that action and restore the office of an elected City Marshal and abolish the office of appointive Chief of Police."
Section 79.050, RSMo, to which you refer, provides:
 "The following officers shall be elected by the qualified voters of the city, and shall hold office for the term of two years and until their successors are elected and qualified, to wit: Mayor and board of aldermen. The board of aldermen may provide by ordinance, after the approval of a majority of the voters voting at an election at which the issue is submitted, for the appointment of a collector and for the appointment of a chief of police who shall perform all duties required of the marshal by law, and any other police officers found by the board of aldermen to be necessary for the good government of the city. If the board of aldermen does not provide for the appointment of a chief of police and collector as provided by this section, a city marshal and collector shall be elected, and the board of aldermen may provide by ordinance that the same person may be elected marshal and collector, at the same election, and hold both offices and the board of aldermen may provide by ordinance for the election of city assessor; city attorney, city clerk and street commissioner, who shall hold their respective offices for a term of two years and until their successors shall be elected or appointed and qualified." (Emphasis added)
This office previously held in Opinion Letter No. 166, issued February 18, 1971, to Sponsler, that the initiative could not be used to reestablish the office of elected marshal under Section79.050. A copy of that opinion is enclosed, as well as the opinion on which it relied, Opinion Letter No. 100, issued December 1, 1961, to Young. This view is also stated in McQuillin, MunicipalCorporations, 3rd Ed., Vol. 5, § 16.49:
 ". . . In no event, however, can a municipality submit an ordinance to a vote of electors without legal authorization, which must come from the constitution itself or from a provision of the charter or statute. . . ."
Since we have no provision for submitting to the voters the question of whether or not the office should revert to that of marshal, we must look to the language of the section itself and to the powers of the board of aldermen to determine how this may be accomplished.
You will note that we have underscored the pertinent portion from Section 79.050, which provides that the board of aldermen may provide by ordinance after the approval of a majority of the voters, for the appointment of a chief of police to perform the duties of the marshal. The word "may" is permissive generally in its ordinary sense and we believe that it is used in that manner here. See Chapter 1, RSMo, Construction of Statutes. See also Opinion No. 149, issued April 22, 1964, to O'Brien, copy enclosed. The language of the statute is clear and concise and means simply that the board of aldermen has the authority to pass an ordinance abolishing the office of marshal if the voters have given prior approval to this exercise of authority. There is nothing in the statute which requires that the matter of reestablishing the office of city marshal be resubmitted to the voters. The board of aldermen having the authority to enact the ordinance establishing the office of chief of police and abolishing the office of city marshal similarly has the authority to repeal the ordinance and to reestablish the office of city marshal.
It has been stated even with respect to ordinances adopted by the initiative (where the initiative is authorized) that in the absence of constitutional or statutory limitations a municipal council of a noncharter city has the power to amend or repeal such an ordinance adopted by the electors of the city. McQuillin,Municipal Corporations, 3rd Ed., Vol. 6, § 21.03, citing State v.Cartledge, 195 N.E. 237 (Ohio).
We assume in answering your question that the city has not purported to provide for any term or tenure rights for the city police chief and therefore we do not direct ourselves to such questions.
CONCLUSION
It is the opinion of this office that a fourth class city board of aldermen which has, with the approval of the voters, provided for the appointment of a chief of police under the provision of Section 79.050, RSMo, has the authority to repeal such ordinance without the approval of the voters and to reestablish the office of city marshal.
The foregoing opinion, which I hereby approve, was prepared by my assistant, John C. Klaffenbach.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Op. Ltr. No. 166 2/18/71, Sponsler
 Op. Ltr. No. 100 12/1/61, Young
 Op. No. 149 4/22/64, O'Brien